(163 App. Div. 452)

COLLINS v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1914.)

1. MASTER AND SERVANT (§ 278*)—DEATH OF SERVANT—RAILROADS—NEGLIGENCE.

Decedent, a beginner switchman located at certain cross-over switches, was informed by the operatives of a switch engine shortly after 5 o'clock in the morning that the engine was going east and would return in 10 or 15 minutes. On its return the headlight and tail lights were burning and the speed did not exceed from 4 to 6 miles an hour. When the engine approached decedent's crossing, the fireman discovered a moving lantern about 100 feet away and that as they continued westerly the lantern passed on and between the rails of the track and then disappeared. Both the engineer and fireman were on the lookout and the bell was constantly ringing. As the engine passed, decedent's lantern was discovered near the track, and immediately thereafter his dead body was found. *Held* insufficient to establish actionable negligence on the part of the operatives of the engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. DEATH (§ 31*)—RIGHT OF ACTION—EXTENT OF RECOVERY—EMPLOYERS' LIABILITY ACT.

Under Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) § 1, providing that in case of the death of an employé of an interstate carrier leaving neither surviving widow, husband, children, nor parents, then the next of kin "dependent" on such employé may recover compensation for his death, only such next of kin as are actually dependent on the deceased employé can participate in such recovery.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35, 37–46, 48; Dec. Dig. § 31.*]

3. DEATH (§ 101*)—EMPLOYERS' LIABILITY ACT—APPORTIONMENT.

Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) § 1, authorizes a recovery for injury or death of an employé of an interstate carrier for the benefit of the surviving widow, husband, and children, and if none then of the employé's parents, and if none then of the next of kin dependent on such employé, etc. *Held*, that where an employé was killed and left neither surviving widow, children, nor parents, but left certain brothers and sisters as his next of kin, it was the duty of the jury in awarding damages to them to apportion the same according to the individual pecuniary loss of each.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 132–140; Dec. Dig. § 101.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. DEATH (§ 84*)—DAMAGES—ELEMENTS—FUNERAL EXPENSES—EMPLOYERS' LIABILITY ACT.

In an action for death of an employé of an interstate carrier under Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) § 1, there can be no recovery for burial expenses or funeral charges.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 110; Dec. Dig. § 84.*]

Appeal from Trial Term, Erie County.

Action by Helen G. Collins, as administratrix of the estate of John J. Collins, deceased, against the Pennsylvania Railroad Company. From a judgment in favor of plaintiff for $2,030.77 damages, interest and costs, and from an order denying defendant's motion, defendant appeals. Reversed and dismissed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Frank Rumsey, of Buffalo (H. J. Adams, of Buffalo, of counsel), for appellant.

Hamilton Ward, of Buffalo (Irving W. Cole, of Buffalo, of counsel), for respondent.

MERRELL, J. [1] Plaintiff's intestate, a young man 18 years and 5 months old, was killed shortly after 5 o'clock in the morning of November 30, 1910, while engaged as a switch tender for defendant at a point in the city of Buffalo near where defendant's tracks cross Bailey avenue. He had been so employed since the 6th of September previous, and was earning only $5 or $6 per week; the position being regarded by the company as that of a beginner. The physical situation and location where the young man was killed are clearly shown upon the map, Exhibit F. It will there be seen that the defendant's main tracks westerly of Bailey avenue were three in number, being respectively the north-bound main track, the south-bound main track, and the running track or track No. 1, which last-named track, although not shown on the map, ends in a spur at a short distance easterly from Bailey avenue. The testimony shows that the duties of plaintiff's intestate were confined to throwing the switches marked "A," "B," and "C" on defendant's main tracks.

On the morning in question a train of cars had been towed in from a point in the state of Pennsylvania and were being switched and distributed by a switching engine operated on defendant's tracks. The train had come in on the north-bound main track, and by means of switches thrown by plaintiff's intestate had crossed over from the north-bound main track across the south-bound track and to and upon the running track or track No. 1, and a portion of said cars had been switched easterly on the running track or track No. 1 across Bailey avenue. In making such cross-over plaintiff's intestate had thrown the switches, and after crossing the south-bound main track plaintiff's intestate was informed by the engineer in charge of the switching engine that the engine would be gone easterly on the running track but 10 or 15 minutes, when it would return, and would then again cross

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

over to its original position on the north-bound main track. The evidence does not show that plaintiff's intestate had any duty to perform southerly of the south-bound main track. However, it appears from the testimony that the yard operatives were accustomed to assemble for rest or shelter in a small building, designated on the map as "G. D. Tower."

There was no eyewitness of the accident which resulted in the death of plaintiff's intestate. The last communication with him was that of the engineer just prior to his trip easterly on the running track when he informed plaintiff's intestate that the engine would return in the space of 10 or 15 minutes. In passing easterly on said running track the engine was headed in an easterly direction. The switch engine was of the fan-tail type (so called), having a running board in front and a sloping tender behind. It was equipped with a headlight and a tail light on the morning in question, both of which were lighted. The engine was backing slowly, running not to exceed from 4 to 6 miles an hour, with the bell ringing. The fireman was seated on the left-hand side of the cab, the engineer on the right-hand side, and both were keeping a lookout in the rear of the engine as it was backing in a westerly direction. The other member of the engine crew, by the name of Moos, who acted as drawbarman, was standing on the running board at the front end of the locomotive, and the first intimation of the accident which the engine crew received was a burning lantern lying within the rails of the track at a point nearly opposite the "G. D. Tower." Moos, the drawbarman, stepped off the running board on which he was standing and proceeded at once toward the lantern, which was lying upon its side between the rails, but still burning. He first found a glove and a short distance easterly the body of plaintiff's intestate with the head severed from the trunk. The fireman testified that as they backed across Bailey avenue on the return trip on the running track, and as he was keeping a lookout toward the west, he first observed between the south-bound track and the running track a lantern moving around at a distance of about 200 feet. He testifies, as they continued westerly, he saw the lantern pass upon and between the rails of the running track and there disappear, when the locomotive was about 100 feet distant from said light. Both the engineer and fireman testify that the rails could plainly be seen for a distance of 75 feet behind the locomotive. The engineer testifies that he himself kept a constant lookout along the track of the backing engine and that he saw no indication of any light or of any person being upon the track. As before stated, the lights were burning and the bell constantly ringing. The fireman did not inform the engineer of the light which he had seen and which disappeared at a distance of about 100 feet back of the engine.

At first thought it might seem that the fireman may have been negligent in not informing the engineer of what he had seen, and that the engineer, in the exercise of reasonable care and prudence, should have seen the light upon the track and sounded his whistle or taken other steps to have prevented the accident. But, considering the fact that plaintiff's intestate was fully advised of the intention of the engine

crew to return on the running track at the time it did, and the further fact that the only excuse for his being upon the track or in a position of danger with relation to this engine was in connection with the performance of his duties as a switchman, would seem to me to negative any imputation of negligence on the part of the train crew. Indeed, plaintiff's intestate may almost be said to have been a part of the engine crew itself, as the performance of his duties was necessary to the operation of the engine. It would seem hardly reasonable that the engineer in charge of the locomotive should be compelled to watch out for the presence of one who had been warned of the early approach of the engine, and who was in fact a part of the machinery of its operation. Assuming that the lantern which the fireman saw was carried by plaintiff's intestate, it can hardly be said that it was within the duty of the fireman to call attention to the fact that the switchman was within the rails at a distance entirely sufficient to enable him to pass across the track in safety, or that the engineer was called upon to slow down or stop his locomotive in order to enable the switchman to cross. In other words, considering the fact that plaintiff's intestate had been warned that the locomotive would return in 10 or 15 minutes, and that he was a person of considerable experience in the operation of the switches, and that the engine lights were burning and the bell ringing, it can hardly be said to have been within the duty of the engine crew to take more precaution than it is shown it did. They had a right to assume, it seems to me, that the switchman was fully warned of the approaching engine, and that if he was upon the track at a distance of 100 feet therefrom, when his lantern disappeared, that he had passed across or taken proper precautions for his safety.

It therefore seems to me that in order to sustain a recovery in this action, which, although small, should be sustained by sufficient competent evidence showing carelessness on the part of the defendant company, we must go further than the facts in this case justify.

I therefore am of the opinion that the plaintiff has failed to establish actionable negligence upon which she could base recovery in this action, and that the judgment appealed from should be reversed, and the complaint dismissed, with costs.

Furthermore, it seems to me that in any event the plaintiff's recovery cannot be sustained.

[2] As before stated, plaintiff's intestate was a young man of about 18 years of age. He was unmarried and left no father or mother or descendants, his next of kin being two brothers who were married, living in their own homes, a sister 26 years of age, who was ill and who lived at home, a brother 23 years old living at home, and another sister, the plaintiff, aged 34; the ages given being the ages of the next of kin at the time of the trial 3 years after the accident. Since leaving school at the age of 14 years, plaintiff's intestate had been occupied by various small jobs in which he had earned only about $5 per week. The plaintiff herself was earning $15 per week, and, as before stated, her intestate was earning from $5 to $6 per week at the time of his death. The testimony is that whatever he earned went to his sister, and pooling their wages they worked out the sup-

port of themselves and their sister, who was ill and not working. It appears that at the time of the accident the unmarried brother and sister lived together, plaintiff acting as the head of the family. From the general fund plaintiff's intestate received his support. It would therefore seem that what he earned would hardly be sufficient for his own maintenance.

The action was originally brought under the state Compensation Act, and upon this being declared unconstitutional the plaintiff was permitted, upon application to the court, to amend her complaint and allege a cause of action under the federal Employers' Liability Act, and it was under the last-mentioned act that the action was tried. The federal statute (section 1) provides as follows:

"Section 1. That every * * * carrier by railroad while engaged in commerce between * * * the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representatives, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part, from the negligence of any of the officers, agents, or employés of such carrier. * * * *"

Said section, it will be seen, thus provides that the recovery is for the benefit of the "next of kin dependent," and thus it would seem that none of the next of kin of plaintiff's intestate would be entitled to share in the recovery, if any was had, except such of them as were actually dependent upon him. The evidence would not seem to indicate that any of said next of kin were dependent upon plaintiff's intestate, and that, as before stated, his wages were hardly sufficient for his own maintenance.

[3] At the close of the charge of the learned trial justice, counsel for the defendant requested that the court charge the jury that the interest of each beneficiary must be measured by his or her individual pecuniary loss, and that that apportionment is for the jury to return. To such request the court acceded, and such became the law of the case. I am of the opinion that under the decision of Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, such request and charge were proper. The court, in the McGinnis Case, held as follows:

"The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss."

It would therefore seem that the jury, in returning a verdict of $1,600 without apportionment thereof among those dependent upon plaintiff's intestate, disregarded the instruction of the court, and that if for no other reason the judgment must be reversed and a new trial ordered. See, also, Southern Railway Co. v. Smith, 205 Fed. 360, 123 C. C. A. 488.

[4] In addition to the above, it seems to me that the trial court, under objection by counsel for the defendant, improperly received

testimony as to the obligation for the funeral charges of the decedent. The federal Employers' Liability Act provides that the damages in case of death of an employé are for the benefit of the next of kin dependent upon such employé, for such injury or death. No provision seems to be included or intended by the federal act to compensate for the expenses of burial, and therefore the testimony received by the trial court under defendant's objection as to such funeral charges was erroneous.

However, as before stated, I do not think the plaintiff established any actionable negligence, and therefore the judgment appealed from must be reversed and the complaint dismissed, with costs. All concur; KRUSE, P. J., in result only, upon the ground that the verdict should have been apportioned. See Southern Ry. Co. v. Smith, 205 Fed. 360, 123 C. C. A. 488.