RICHARD J. SMITH, Admr. of the Estate of JUAN LEAL, Deceased, Appellant, v. EDWARD V. PRYOR, Receiver of the WABASH RAILROAD COMPANY, a Corporation, Respondent.

### Kansas City Court of Appeals, November 27, 1916.

1. **NEGLIGENCE: Damages: Employer's Liability Act: Dependent Next of Kin.** The Federal Employer's Liability Act gives a right of action to the deceased employee's next of kin only in the event that they are "dependent upon such employee." Such dependency need not be complete or entire, but must exist either in whole or in part. Dependency is the state of relying upon something or some one as for anything necessary or desirable. It connotes the idea of continuity of such reliance. Hence, the sister of a deceased employee, his next of kin, who had received occasional gifts from him and who probably would have received other gifts had he lived, and who in fact suffered a possible pecuniary loss in his death, was not a "dependent."

2. ———: ———: ———: ———: **No Evidence of Specific Negligence Charged.** The facts reviewed, and held that there was no evidence disclosing the specific negligence charged against the employee's foreman, namely, that he knew or by the exercise of ordinary care might have known, that the track on which he ordered the hand-car carrying the employees to proceed, was not clear and that a freight train was approaching thereon, in time to have avoided a collision with said hand-car.

3. ———: ———: ———: **Present Value of Damages: Excessive Verdict.** A verdict of $1500, in an action under the Federal Employer's Liability Act, brought by the administrator of a deceased employee for the benefit of a sister as his next of kin, which even were it assumed that he gave her $37 a year amounted to twice the present value of such yearly contribution during her life expectancy, was excessive; as a dependent is only entitled to recover the present value of his loss.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss,* Judge.

AFFIRMED.

*E. E. Naber* and *Ralph Hughes* for appellant.

*N. S. Brown* and *Craven & Moore* for respondent.

TRIMBLE, J.—This is an action under the Employer's Liability Act for the death of Juan Leal, brought by the Administrator of his estate for the benefit of Cornelia Sanchez as next of kin dependent upon said deceased employee.

Deceased was one of a crew of six men, consisting of the foreman and five others, engaged in doing repair work on that portion of defendant's interstate track lying between the stations of Randolph and Harlem in Clay county. They were on a hand-car going to their work through a very heavy fog when a freight train, coming in the opposite direction, collided with the hand-car, and Leal was instantly killed. In fact, the collision resulted in the death of the foreman and all of the men but one.

After a trial, the jury returned a verdict of $1500 in plaintiff's favor, but the court sustained the motion for a new trial, giving the following reasons: 1. The verdict is excessive. 2. The court should have sustained defendant's demurrer to the evidence and should have directed the jury to return a verdict for defendant. Plaintiff then appealed.

As submitted, the case was based upon a particular and specific charge of negligence in the foreman, namely, that he knew, or by the exercise of ordinary care could have known, that the track was not clear, and that a freight train was approaching, in time to have avoided the collision.

The tragedy occurred on the morning of January 19, 1914. A few minutes before seven, the foreman and his men assembled their tools and proceeded on the handcar down the side track till they came to its junction with the main line. Here the foreman ordered the hand-car to stop, saying they had better wait until after a certain tran, No. 52, had passed, as it was near her time. He

directed that they wait until it passed, and said that he would go into the depot and ascertain if any train was out of Harlem, and "as soon as 52 goes, if there's nothing out on our line we will go." (They were then near the depot at Randolph and their place of work was west of there toward Harlem, which station was five miles distant.) While the foreman was in the depot the expected train 52 passed. The foreman came out and gave the order to start, saying "there's nothing out of Harlem." They started. As the hand-car went down the track one of the men asked if they "hadn't better look out for No. 4 (an east-bound train), its pretty near time?" The foreman looked at his watch and replied that No. 4 was not yet out of Harlem. No. 4 was a Burlington train. (From a point east of Randolph west to Harlem, the Burlington and Wabash tracks lie side by side, and the tracks were used by both roads as a "double track," all west-bound trains going on the Burlington track, and the east-bound gong on the Wabash.) Just after a Burlington train, going west on its track, passed the hand-car with considerable noise, an east-bound train, not the Burlington No. 4, but a Wabash train, No. 72, which was an hour late, met and struck the hand-car with the result above stated.

Plaintiff's evidence discloses the above facts and further shows that there was "a very dense fog" prevailing. Plaintiff's witness, Rigley, who was the only survivor, says he and the foreman were looking west; that the hand-car was going six or eight miles an hour; that when he first saw the headlight of the approaching train it was thirty or thirty-five feet away and he tried to jump but the collision occurred before he could do so; that the fog was very dense and that one could see a headlight about thirty or thirty-five feet but could not see that far if it wasn't for the headlight. He did not know how fast the train was going, but the engineer thereon says its usual speed was thirty miles an hour and that it was going twenty-five miles on that morning. The engineer says the fog was so thick he could not see the pilot of his engine. It is difficult to understand how the

foreman could have seen the train in time to have avoided the collision or how he could have heard it and distinguished it from the noise of the Burlington train on the adjacent track. The foreman went into the depot to ascertain if the track was clear and came out saying it was. There is no evidence as to what the agent informed him, and, in the absence of some showing that the foreman ought to have known that No. 72 had not passed but was late and was liable to come along or that he disregarded the information given him by the agent, it cannot be presumed that he did. Nor could the jury conjecture or guess that he did. It is, therefore, difficult to see wherein the foreman was guilty of the *particular specification* of negligence on which the case was submitted.

But, aside from this, there is another question affecting plaintiff's right to recover on the evidence as it now stands. And that is whether the one for whom the suit was brought was *dependent* upon the employee. The evidence properly shows that deceased had never married and had neither wife nor child and that his parents were dead as were also all of his brothers and sisters except Mrs. Sanchez who was his half sister through his mother. Mrs. Sanchez was, therefore, his next of kin, but the Federal Act gives a right of action to the next of kin only in the event that they are "dependent upon such employee."

Mrs. Sanchez was forty-eight years of age, had been a widow for sixteen years, and had four children, two sons and two daughters, all of whom were grown and living in Uriangato, State of Guanajuato, Mexico, where she resided. Her parents in life, had been Mexican laborers. She and all of her family had always been in that station. The only evidence on the question of dependency is contained in her deposition, and is as follows:

"State if such brother (referring to deceased) contributed anything to your support. Answer. Yes, sir.

If he contributed to your support, state to what extent, if any, he contributed. Answer. He always

sent me different quantities (sums), ten, twelve, fifteen dollars.

If he contributed to your support, state how much money, if any, he sent you each year. Answer. I cannot calculate because he was not one year in the United States.

If he contributed any to your support, state when you received the last money, if any, from him and the amount thereof. Answer. The last time was in the month of December, 1913, and the amount was ten dollars gold.

Have you any means of support other than your own efforts? Answer. I haven't a single cent and have to work to support (maintain) myself."

There was no evidence of any change in her situation or condition which might have a tendency to show either an arrangement or an obligation, moral or otherwise, whereby her half-brother, who was also a laborer, a section hand, and presumably without accumulated means, took upon himself the burden of providing for her maintenance, or any reason in the nature of things why he should feel impelled to do so or that she should look to him therefor, or have any reason to expect same. There was no evidence of inability on her part to make her own living, no ill health or bodily misfortune befalling her so as to call for him to step into the breach; no inability or refusal on the part of her children to do for her if she had need therefor. The only definite sum she mentions is $10 in gold sent her in December, 1913, presumably a Christmas gift. She says he sent her different sums, and, taking the total of the amounts mentioned, it aggregates only $37, and she is unable to say how much was given in a year. He was thirty-six years old and there is no evidence as to how long a time was covered in the giving of the amounts mentioned.

The most that the evidence shows is that the deceased several times gave her a sum of money. But mere occasional gifts do not make the recipient "dependent" upon the giver within the meaning of the

statute. True, the Act does not require that the dependency must be complete or entire. A partial dependency will be sufficient to furnish the basis of an award in some amount. But *dependency*, either in whole or in part, must exist. It is a state or relation. Dependence is "the state of relying upon something or some one, as for anything necessary or desirable." [New Standard Dictionary.] It has in it also something of the idea of *continuity of reliance* so to speak. The term "dependent" in the statute is somewhat similar in meaning to the term used in the charter of associations which provide for the payment of benefits to persons dependent upon deceased members. "A dependent, as the term is used in reference to these benevolent associations, is one who is sustained by another, or *relies* for support upon the aid of another." [Italics ours] [Alexander v. Parker, 224 Ill. 355, 1. c. 366.] A person is dependent upon another when he has the moral right to rely and does rely upon such other for support either in whole or in part. [Murphy v. Nowak, 223 Ill. 301, 307.] Now the mere fact that deceased had at different times sent her an occasional sum does not establish dependency. The evidence, at the most, shows only that she would probably have received other sums as gifts in the future had he lived. In other words, she may have suffered a possible pecuniary loss in the death of her brother but nothing more than that. But, while it is necessary to show only *pecuniary loss* in the case of a husband, wife, children or parents, yet, in the case of one who is not in the above category, *dependency* must also be shown and be proved like any other fact. [Dooley v. Seaboard Air Line Railway Co., 163 N. C. 454, 79 S. E. 940; Collins v. Penn. Ry. Co., 148 N. Y. Supp. 777; Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 68; American R. Co. v. Dedrickson, 227 U. S. 145, 149; Gulf, etc., R. Co. v. McGinnis, 228 U. S. 173; Moffett v. Baltimore & Ohio R. Co., 22 Fed. 39, 43; McCullough v. Chicago, etc., R. Co., 142 N. W. 67.] An occasional gift or contribution does not create dependency. [Bartle v.

Northern Pacific Ry., 111 Pac. 788; Hodnet v. Boston and Albany R. Co., 156 Mass. 86.]

It may also be observed that, had dependency been proved, the trial court's ruling that $1500 was excessive should not be disturbed    The verdict must be based upon the probable pecuniary loss the beneficiary has sustained in the death. [Authorities supra.]    The jury must have a reasonable basis of facts upon which to compute the damage and it is the duty of plaintiff to supply those facts.    Now the most that can be gathered from the testimony is that deceased contributed $37 to Mrs. Sanchez throughout the past. Even if it should be assumed that he gave this in one year and the amount should be taken as a basis for succeeding years, it would take nearly twice $37 per year to make the *present value* of the yearly payments, anticipated during the life expectancy of Mrs. Sanchez, equal $1500.    And it is only the *present value* thereof that plaintiff would be entitled to recover if she were dependent upon the deceased.    [Chesapeake, etc., R. Co. v. Gainey, 36 Sup. Ct. Rep. 633.]

It cannot be said, therefore, that the court erred in thinking $1500 was excessive.

For these reasons the judgment is affirmed and the cause remanded for the new trial awarded by the trial court.    All concur.