In the Matter of the Estate of JACOB RADEMAKER, Deceased.

Surrogate's Court, Kings County, February 4, 1938.

*Weinstein* v. *Levinson*, for Isabel Rademaker, widow, as administratrix, etc., petitioner.

*Wingate & Cullen*, for Edward Rademaker, as general guardian of Virginia Rademaker, infant daughter of decedent, contestant.

WINGATE, S.   Three issues are presented for determination in this proceeding.   The first, and most earnestly argued, concerns the propriety of a readjustment by this court of the purported allocation by a settlement committee of the damages awarded to the administratrix of this decedent for the loss sustained by his dependents resulting from his death in the *Mohawk* sea disaster in 1935.   The second relates to the proper compensation to be awarded to the attorneys who were active in the presentation of the claim, and the third raises the question of the right of the administratrix to commissions on the recovery received.

The decedent, at the time of his death, is stated to have been a steward employed on the steamship *Mohawk*.   He met his death on the high seas while engaged in such occupation, in the misfortune which overtook that ill-fated vessel.   His surviving dependents were his widow and a minor daughter by a former marriage, who was orphaned by reason of his death.

The steamship companies involved in the disaster instituted proceedings in the Federal courts for a limitation of their liability, as a result of which a fund of $360,000 was set up and, in essence, deposited in court, for the compensation of all persons who had sustained injury as a consequence of the misadventure.   In connection with this liquidation of the gross total of all claims, a commission was appointed with the consent and approval of ninety-five per cent of the claimants, to which the following express authority was accorded:

" All accepting claimants in the *Mohawk* and the *Talisman* proceedings hereby irrevocably authorize the said *Mohawk* Committee to act for them and each of them in all matters in connection with this settlement or the agreement and to arbitrate, agree or otherwise determine the validity and amounts of all claims in the *Mohawk*

and *Talisman* proceedings and to make distribution of said *Mohawk* settlement fund *pro rata* in accordance with such determination and to carry out the obligations of said Committee or of said claimants or their proctors under this agreement. All determinations of said Committees shall be final and binding upon the claimants."

Letters of limited administration were granted by this court to the widow on April 13, 1935, authorizing her to prosecute the action accorded by law for recovery for the wrongful death of the decedent, and early in September, 1936, the widow, as such administratrix, applied to this court for permission to enter into the settlement agreement noted. Such permission was granted, and she acted thereon and became a party thereto. It may be observed parenthetically that, even had this not occurred, the proceedings of the committee would apparently have become binding upon her and those whom she represented by virtue of the final decree in the proceeding in the United States District Court, entered on February 5, 1937.

In any event, the widow-administratrix did participate in the proceeding, duly presented proofs of claim to the committee of the losses sustained by the bereaved dependents whom she represented, namely, herself and the orphan, and, through counsel of her choice, argued before the committee in respect of the determination.

On or about July 1, 1937, the committee announced its awards upon the claims which had been asserted before it, and apportioned the total fund available and the *pro rata* of attendant expenses as authorized in the agreement of settlement.

The award in respect of the death of this decedent read as follows:

" Name of Claimant. . .Isabel Rademaker, Administratrix of the Estate of Jacob Rademaker, deceased.

Name of Proctor........................Weinstein & Levinson
Address......................11 Park Place, New York, N. Y.
Valuation of Claim (see below)..............$7,000.00
Gross Distributive Share (46.90985%)........     $3,283.69
Now available for Distribution (75%)........     2,462.77
Share of expenses approved to date..........     65.38
Amount of Present payment.................     2,397.39
Check to:     Please advise
*Pecuniary Loss* .

Isabel Rademaker, widow..................$3,500.00
Virginia Rademaker, daughter.............. 3,500.00

              Total    $7,000.00 "

In a proceeding instituted on behalf of the administratrix in the United States District Court for the Southern District of New York attempting to impeach the award thus made, Judge Coxe determined that the "Committee's evaluation of any claim should be final and binding."

In the present proceeding before this court attack is again made thereon. In the present instance it is addressed solely to the allocation of the aggregate award, as made by the committee, to the widow and orphan in equal shares. It is contended that this mode of division was improper, that it is not binding on this court or any one else, and that a redistribution should be made by this court which will give the widow twenty-three twenty-ninths of the sum total and the orphan only six twenty-ninths.

In approaching an evaluation of this position, certain pertinent legal principles are worthy of recollection. At common law no right of recovery existed for occasioning the death of an individual under circumstances similar to those here present, wherefore it is essential that some statutory alteration of the law be identified as according a right to compensation. (*Phœnix Indemnity Co.* v. *Staten Island Rapid Transit Co.*, 251 N. Y. 127, 136; affd., 281 U. S. 98; *Western Fuel Co.* v. *Garcia*, 257 id. 233, 240; *The Harrisburg*, 119 id. 204, 213; *The Alaska*, 130 id. 201, 209; *La Bourgogne*, 210 id. 95, 138, 139; *Werra* v. *Cassedy*, 229 App. Div. 590, 592; *Matter of Killough*, 148 Misc. 73, 78; *Matter of Aronowitz*, 151 id. 746, 747; *Matter of Klein*, 162 id. 589, 591.)

Although the decedent was domiciled in the State of New York, the laws of which, if applicable, would award to the orphan two-thirds of the total damages recoverable for the death (Dec. Est. Law, § 133, § 83, subd. 1), it is not contended by any one, and is wholly obvious, that New York laws are not controlling, since the accident occurred on the high seas, over which the legislative authority of this State does not extend. (*Cunard Steamship Co.* v. *Mellon*, 262 U. S. 100, 124; *Southern Pacific Company* v. *Jensen*, 244 id. 205; *Lynott* v. *Great Lakes Transit Corporation*, 202 App. Div. 613, 619; affd., 234 N. Y. 626; *Matter of De Martino*, 142 Misc. 431, 435.) It follows that the pertinent United States statutes are those to which reference must be made to determine the rights of all persons in the present connection. (*Second Employers' Liability Cases*, 223 U. S. 1, 55; *Missouri, Kansas & Texas Railway* v. *Wulf*, 226 id. 570, 576; *Taylor* v. *Taylor*, 232 id. 363, 370; *Engel* v. *Davenport*, 271 id. 33, 37; *Collins* v. *Pennsylvania R. R. Co.*, 163 App. Div. 452, 458.)

The Federal statutes which are potentially pertinent are the so-called "High Seas Act" (U. S. Code, tit. 46, §§ 761–768),

which was enacted on March 30, 1920, and the Jones Act (U. S. Code, tit. 46, § 688), which was passed on June 5, 1920, some two months later, and at the same session of Congress as the High Seas Act. The latter act, while purporting to be merely an amendment of a law passed on March 4, 1915 (38 U. S. Stat. at Large, 1185, chap. 153, § 20), was much broader in scope than the usual alteration of an existing statute, since it made applicable to " any seaman who shall suffer personal injury in the course of his employment," " at his election," the provisions of existing law applicable to railway employees, whereas the earlier statute had merely abolished the fellow-servant rule as between the seaman and those in authority over him. The concrete result of the enactment of the Jones Act, therefore, was in substance to require the reading into the Employers' Liability Act (U. S. Code, tit. 45, § 51), enacted April 22, 1908 (35 U. S. Stat. at Large, 65, chap. 149, § 1), of a provision permitting recovery for injury to a " seaman " against his employers, in a manner identical with that theretofore permitted in respect of a railway worker.

The differences in terminology between the several acts as to the individuals in respect of whose injury recovery may be had is interesting. In the Employers' Liability Act it is " any person suffering injury while he is employed by such carrier in such [interstate] commerce." In the Jones Act it is " any seaman." On the other hand, in the High Seas Act recovery is permitted only by reason of death, and applies to the death of any " person." It is obvious, therefore, that recovery under the first two acts noted is *prima facie* limited to injury or death to an employee, with an apparent limitation in the Jones Act to a particular variety of employee, namely, " a seaman," whereas in the High Seas Act recovery may only be had where a death has occurred, but, in such eventuality, may be had in respect of any " person " whomsoever, whether or not he was an employee.

The word " person " is, of course, broader in scope than " seaman," even if the latter designation be attributed the connotation of " employee," as appears to be the tendency of Federal courts. (Cf. *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50; *Uravic* v. *Jarka Co.*, 282 id. 234, 238.)

It follows from this review that at the time of the enactment of the Jones Act there was already a statute in force which authorized recovery for damages resulting from the death of any person on the high seas, whether an employee or otherwise. For the same legislative body and at the same session to have enacted another law designed to cover the same situation would have been a futile and absurd action on its part, and, on universally applied principles

of statutory construction, such a result will not be imputed to it if any other reasonable interpretation of its dual enactments is attainable. (*Heydenfeldt* v. *Daney Gold, etc., Co.*, 93 U. S. 634, 638; *Holy Trinity Church* v. *United States*, 143 id. 457, 461; *Hawaii* v. *Nankichi*, 190 id. 197, 213; *United States* v. *Katz*, 271 id. 354, 363; *United States ex rel. Anderson* v. *Anderson*, 76 F. [2d] 375, 378, affg. 8 F. Supp. 812; *Baxter* v. *McGee*, 82 F. [2d] 695, 700; *Flowers* v. *United States*, 83 id. 78, 82; *People* v. *Ryan*, 274 N. Y. 149, 152; *East* v. *Brooklyn Heights R. R. Co.*, 195 id. 409, 412.)

This principle of interpretation is especially applicable in a situation like the present, in which the two acts in question were passed by the same legislative body, the one following the other within an extremely brief period of time and both relating to the same general subject of maritime injury or death.

Perhaps the leading case on this feature of the rules of statutory construction is *Smith* v. *People* (47 N. Y. 330), in which the court (at p. 339) states the following rule: " Statutes enacted at the same session of the Legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia*. Each is supposed to speak the mind of the same Legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session."

The principle has received consistent application in the courts of this State (*People ex rel. Chadbourne* v. *Voorhis*, 236 N. Y. 437, 444; *McMaster* v. *Gould*, 240 id. 379, 384; *City Bank Farmers Trust Co.* v. *Ardlea Corp.*, 267 id. 224, 227; *Robia Holding Corp.* v. *Walker*, 230 App. Div. 666, 668, 669; *City of New York* v. *Every*, 231 id. 581, 585), and appears to be no less firmly established in the Federal courts, although there its reiteration has been somewhat less frequent. In *United States ex rel. I. G. Farbenindustrie Aktiengesellschaft* v. *Burnet* (65 F. [2d] 195, 196) the Court of Appeals of the District of Columbia quotes the foregoing language from *Smith* v. *People*, although attributing it to Lewis' Sutherland on Statutory Construction ([2d ed.] vol. 1, § 268). *Moss* v. *United States* (29 App. D. C. 188, 197) cites and follows *Smith* v. *People* itself. (Cf. also *Black* v. *Scott*, Fed. Cas. No. 1464.)

Finally, the statement is made in *United States* v. *Jefferson Electric Co.* (291 U. S. 386, 396), and repeated verbatim in *United States* v. *Arizona* (295 id. 174, 191), that " As a general rule, where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken

as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is clearly shown."

The result of the application of these principles would seem to indicate that the intent of Congress in the enactment of the Jones Act was to make applicable to the seafaring occupation only such features of the Employers' Liability Act as were not already expressly covered by the High Seas Act, or, to state the matter concretely, that since one employed in this occupation, being obviously included in the term "person," was covered, so far as his death from wrongful act on the high seas was concerned, this coverage in the High Seas Act remained unaffected by the Jones Act, and he was merely accorded additional coverage thereby for his death when this did not occur "beyond a marine league from the shore" (U. S. Code, tit. 46, § 761) or where he was merely injured and not killed.

The purpose of this consideration will be apparent when it is observed that the rights accorded and the procedure specified in respect of the two acts are not identical. In the High Seas Act suit by the personal representative of the decedent is authorized "for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative" (U. S. Code, tit. 46, § 761), whereas in the Employers' Liability Act, which is incorporated by reference into the Jones Act, the right of action is given to the personal representative "for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee" (U. S. Code, tit. 45, § 51).

In other words, whereas under the High Seas Act a parent and a dependent relative are on an absolute parity with a surviving spouse or a child so far as right to indemnity is concerned, in the Employers' Liability and Jones Acts no recovery may be had in respect of the loss sustained by a parent unless there is neither a surviving spouse or child, and no recovery may be had in respect of the injury to a dependent relative unless in addition to the non-existence of a surviving spouse and child be added that of a parent.

This difference in the terms of the statutes is, of course, not material in the case at bar, since, so far as has been made to appear, the only persons who suffered loss by reason of this decedent's death were his widow and orphaned child. Another difference between the statutes, however, is, in the opinion of the court, of vital importance and has been made the subject of somewhat extended discussion by the litigants. This relates to the question of apportionment of the recovery.

Section 2 of the High Seas Act (U. S. Code, tit. 46, § 762) reads:

" Amount and apportionment of recovery.— The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit it brought and shall be apportioned among them *by the court* in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought." (Italics not in original.)

There is no equivalent provision in the Employers' Liability or Jones Acts, the only pertinent phraseology being that hereinbefore quoted, which authorizes action by the personal representative " for the benefit of " the designated persons " for such injury or death."

On behalf of the widow it is urged that the reference in the italicized words in the foregoing quotation from the High Seas Act signifies that the Congress intended that such apportionment should be made by a Surrogate's Court. His argument in this regard, while extended, is elusive, and in view of the express limitation in the preceding section respecting the venue of such an action to " the District Courts of the United States, in admiralty," is deemed untenable. Suit on such a claim is, under the express language of the statute, permissible only in " the District Courts of the United States, in admiralty," and " the recovery  *  *  * shall be apportioned among them [*i. e.*, the persons for whose benefit the suit is brought] by the court." Obviously " the court " to which reference is made is the previously indicated District Court of the United States, in admiralty, to which exclusive jurisdiction to determine the controversy was previously accorded.

It will be noted that the language in which the direction for apportionment is couched is mandatory. It " *shall* be apportioned." It is, consequently, impossible to escape the conclusion that this procedural feature was deemed important by Congress in connection with a High Seas Act recovery, and that a failure by the determining tribunal to observe this explicit direction would amount to an express flouting of the statutory direction. No authority has been called to the attention of the court which holds that under the High Seas Act any apportionment is permissible other than by the tribunal in which the award is made. *Gulf, Colorado & Santa Fe Railway Co.* v. *McGinnis* (228 U. S. 173); *Central Vermont R. Co.* v. *White* (238 id. 507) and *Collins* v. *Pennsylvania R. R. Co.* (163 App. Div. 452) were all cases under the Employers' Liability Act, the provisions of which do not, as noted, require apportion-

ment. Furthermore, this act, and consequently the Jones Act by incorporation, make no specification respecting procedure or venue, merely giving a right of action for damages, which is obviously capable of prosecution in any competent tribunal with the right to jury trial. In the High Seas Act, however, the venue is particularly specified as a United States District Court, with the further express limitation that it must be a United States District Court sitting " *in admiralty*," in which no right to jury trial exists.

It is obvious, therefore, that if the argument of the widow, based on expediency, were entitled to any weight, which, in the opinion of the court it is not, there would be no advantage in the determination of the question of apportionment by a surrogate rather than by the tribunal to which the Congress has expressly accorded complete authority over the entire question.

In the present instance it is true the adjudication was not made by the District Court itself but by a commission or committee expressly chosen by the claimants themselves with the approval of the court. Except in so far as modified by the express agreement, however, this commission acted substantially for and in the place of the court in the same manner that a special master or referee would have done, and its findings and determinations, including that of the apportionment, made in accordance with the mandatory directions of the statute, are entitled to the same consideration as would have been due the like determinations of the court itself.

Even though this mandatory direction were absent from the statute so as to make it equivalent in this respect with the Jones and Employers' Liability Acts, yet even in such a situation a trier of the facts *may* determine the apportionment if it sees fit (*Central Vermont R. Co.* v. *White*, 238 U. S. 507, 515), and when such action has been taken it would indeed be an act of presumption for a different tribunal, not vested with appellate authority, to undertake to supersede the determination made.

The final argument of the widow is addressed to the authority of the commission to make the apportionment under the terms of the agreement, the pertinent language of which was quoted in the early part of this opinion. So far as important in this connection, authority is accorded to " determine the validity and amounts of all claims." It is contended that the only claim presented was the claim of the administratrix, which was for a lump sum award to cover the losses sustained by the widow and orphan collectively, and that the quoted language did not authorize the commission to fix the amounts of the respective damages of the widow and orphan individually.

Whereas the court will not brand this argument as sophistical, its ratiocination is too tenuous to carry conviction. The consent, as executed pursuant to the authorization of this court, authorized the commission to assess the aggregate of damage. This inevitably carried with it an implied authority to do any acts and things essential to the attainment of the authorized result. The only known method of determining an aggregate total is by adding together the individual items which combine to make that total. This cannot be done until these individual items are determined, wherefore, an authorization to determine the ultimate total inevitably implies an authorization to determine the elements composing it. Algebraicly expressed, the unknown quantity of the claim of the administratrix may be represented by " Z." This is composed of " X," representing the loss of the widow, and " Y," that of the orphan. The resulting equation, " X plus Y equals Z," is solvable only after the values of " X " and " Y " are determined.

The court, accordingly, declines to interfere, as urged by the widow, with the allocation of the award made by the committee, the concrete result of which would be to award the orphan for the loss of her sole surviving parent the sum of approximately $184, payable now, and an additional $61 at some more or less indefinite time in future.

The attorneys seek a validization as against the estate of their contingent retainer of thirty-five per cent of the recovery. This is at a slightly higher rate than the one-third which custom has established as a reasonable charge for the prosecution of death claims. Nothing has been demonstrated to justify this increase. It might even be argued that the services of counsel in this connection were far less arduous than in the usual prosecution of a death case. The court is, however, disinclined to reduce the compensation below the customary thirty-three and one-third per cent, which experience has demonstrated is a fair average. As against the estate, therefore, the retainer will be validated to the extent of thirty-three and one-third per cent of the net recovery, plus demonstrable actual out-of-pocket disbursements, and no more.

The final question which has been submitted, but not argued or briefed, is as to whether the administratrix possesses a right to statutory commissions on the fund received. This must be answered in the affirmative. Whereas the statutory right of recovery is purely for the benefit of persons bearing a prescribed relationship to the decedent, this fact does not form any basis for differentiating the situation from any ordinary intestate distribution in which the administrator marshals the estate for the ultimate benefit of the distributees described in section 83 of the Decedent Estate Law.

The only difference between the cases is that distribution is made to persons entitled under differing devolutionary statutes. In both instances services are rendered by the fiduciary for which, on ordinary principles, he is entitled to compensation. The measure of such compensation for a fiduciary in this court is the commissions prescribed in section 285 of the Surrogate's Court Act.

In its discretion the court will award costs of this proceeding to the infant, payable from the widow's share in the distributable proceeds.

Enter decree on notice in conformity herewith.