In the Matter of the Estate of HARRY KLEIN, Deceased.

Surrogate's Court, Kings County, April 20, 1937.

*Zimmerman & Zimmerman,* for the petitioner, Mary Klein, as administratrix, etc., accountant.

*Gladys M. Dorman,* special guardian for Irving and Bernice Klein, infants.

WINGATE, S. The facts of this case present an unusual and legally interesting question. On May 3, 1936, the decedent was a passenger on board the fishing schooner *MJR111* which collided with the steamship *Angelina* upon the high seas about twelve and a half miles off the New Jersey coast. The decedent and a number of his fellow voyagers were hurled into the sea, and in spite of diligent search by the United States Coast Guard, their bodies were not recovered. At the time of his death he was forty-four years of age.

He was survived by a widow, who was then forty-six years of age, and by two children, Irving, aged thirteen, and Bernice, ten. Limited letters of administration were issued to the widow on May 15, 1936, to permit her to prosecute an action against those responsible for the accident, and such action was instituted in the United States District Court for the Southern District of New York. Prior to its being reached for trial, a compromise settlement was effected with the approval of this court, for the sum of $13,000, and the question presently propounded relates to the manner of disbursement of this sum.

The original retainer of the counsel for the administratrix provided for a contingent payment of fifty per cent of any sum realized, plus disbursements actually incurred, but the attorneys have voluntarily waived this stipulated remuneration and agreed to

accept one-third of the recovery plus their actual expenses of $79.52. This arrangement represents a fair compensation for their services under the facts disclosed, and will be approved.

The concrete question remaining for decision, therefore, is as to the proper method of division of the net avails between the decedent's widow and children. In this connection the court has been greatly aided by the diligence and painstaking effort of the special guardian appointed to protect the interests of the infants.

It is, of course, a familiar fact that at common law no right to recovery arose by reason of the performance of an act resulting in death, and the present day alteration of this condition is purely the result of various pertinent statutory enactments. (*Phœnix Indemnity Co.* v. *Staten Island Rapid Transit Co.*, 251 N. Y. 127, 136; affd., 281 U. S. 98; *Western Fuel Co.* v. *Garcia*, 257 id. 233, 240; *The Harrisburg*, 119 id. 204, 213; *The Alaska*, 130 id. 201, 209; *La Bourgogne*, 210 id. 95, 138, 139; *Werra* v. *Cassedy*, 229 App. Div. 590, 592; *Matter of Killough*, 148 Misc. 73, 78; *Matter of Aronowitz*, 151 id. 746, 747.)

It follows that since any rights of this variety, which have been created, are traceable solely to the enactment of some legislative body possessing authority to act in the given situation, the nature and extent of the rights thus brought into being are determinable solely in accordance with the particular statutory authorization therefor. (*Engel* v. *Davenport*, 271 U. S. 33, 37; *Lynott* v. *Great Lakes Transit Corp.*, 202 App. Div. 613, 619; affd., 234 N. Y. 626; *Collins* v. *Penn. R. R. Co.*, 163 App. Div. 452, 458; *Matter of De Martino*, 142 Misc. 431, 435.)

In the present case this is unquestionably found in sections 761 and 762 of title 46 of the United States Code, enacted on March 30, 1920. It is therein provided:

" § 761. Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the District Courts of the United States, in admiralty for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

" § 762. The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have

suffered by reason of the death of the person by whose representative the suit was brought."

Whereas section 767 of the same statute further provides that " The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter," as a result of which actions for death occurring within the territorial waters of a given State may still be determinable in accordance with its individual statutes (*Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242), such a result is obviously unattainable in a case like the present where the cause of death occurred " on the high seas beyond a marine league from the shore of any State," in respect to which section 8 of article 1 of the United States Constitution accords regulatory powers to the Congress. It follows that there is no reasonable possibility of dissent from the position of Judge Moscowitz in *Echavarria* v. *Atlantic & Carribean Steam Navigation Co.* (10 Fed. Supp. 677, 678) that " With the enactment of the Federal Death Act, the conclusion cannot be avoided that the Death Statutes of the several States were superseded so far as they had been theretofore applied to death on the high seas."

It follows, therefore, that the right of recovery having been created by the statute hereinbefore quoted, the net avails must be distributed in the manner specified in section 762 thereof, by their apportionment among " the persons for whose benefit the suit is brought " " in proportion to the loss they may severally have suffered by reason of the death." (*The Culberson,* 61 F. [2d] 194, 195.)

Since the statutory method of distribution prescribed in this connection corresponds exactly with those specified in the Federal Employers' Liability and Jones Acts, the considerations governing the concrete allocations are identical with those which were reviewed by this court in some detail in its opinions in *Matter of Uravic* (142 Misc. 775) and *Matter of DeMartino* (Id. 785).

Obviously, the persons who suffered loss were the wife and two minor children of the decedent. The injury to the former is for deprivation of anticipated support during the normal expectancy of the joint continuance of her life and that of the decedent. At the time of the accident she was forty-six years of age with an expectancy according to the American Experience Table of mortality of twenty-three and eighty one-hundredths years. The decedent, being forty-four, possessed an expectancy of twenty-five and twenty-seven one-hundredths years. The former period accordingly represents the period during which support by the decedent was reasonably to have been anticipated by her.

Under normal conditions, Irving, the son aged thirteen, might expect support during the balance of his minority, a total of eight

years, and Bernice, the ten-year old daughter, for eleven years·
The situation actually present is, however, somewhat unusual.
The decedent, at the time of his death, was a W. P. A. worker
whose earnings for the period of approximately a year before his
death totaled only $477.43. For the previous two years they had
averaged less than $25 per week from which sum his personal
expenses had to be deducted. The boy is a bright lad engaged
in learning a trade which will presumably render him self-supporting
within two or three years. Judging by the previously demon-
strated abilities of the decedent as a provider, there seems small
probability that the boy would have received any contributions
from him after the age of seventeen.

Bernice, the daughter, on the other hand, is distinctly abnormal.
Although now eleven years of age, she is capable of uttering
only a few words, has never been able to attend school and is
incapable of going anywhere unless accompanied by her mother.
Whereas it is obvious that her dependency far exceeds that of a
normal child, it is somewhat difficult of evaluation in respect to
one whose father possessed no greater productive powers than
those demonstrated by the decedent. Had he continued to live,
she would probably either have remained a member of the house-
hold under her mother's care or been hospitalized at public expense.
Such will probably be her future now that her father has been
removed. Were it not for the possibility that her mother may
remarry, an award of the major portion of this infant's share to her
mother would probably effect a reasonably safe protection of her
interests, but in view of this contingency such a course would
seem to be improper. Taking all of the various factors into con-
sideration, a proper allocation would seem to be on the basis of
a dependency of the widow of twenty-four years, of the son of
four years and of the daughter of twelve years, with a resulting
allocation of twenty-four-fortieths of the net recovery to the widow,
four-fortieths to the son and twelve-fortieths to the daughter. Based
on the original settlement figure, this would give the widow $7,800,
the son, $1,300, and the daughter $3,900. These amounts are,
however, of course, subject to *pro rata* reduction for the expenses
of the recovery and of this proceeding.

It should be observed, however, in respect to the sums allocated
to the infants that since the amounts awarded to them represent
the support which they might reasonably have expected from the
decedent, they are properly usable, both income and principal,
for their support, subject to the supervisory powers of the court.

Enter decree on notice in conformity herewith.