Mary C. Bugden, administratrix, *vs.* Trawler Cambridge, Inc.

Suffolk.   January 7, 1946. — March 7, 1946.

Present: Field, C.J., Qua, Dolan, Ronan, & Wilkins, JJ.

*Negligence,* Toward seaman.

At the trial of an action against the owner of a ship for alleged negligence in failing to prevent a seaman from committing suicide by jumping overboard while at sea, where there was no direct testimony that the seaman was technically insane but there was evidence of abnormal conduct on the seaman's part showing that he was suffering from "an acute mental upset" following excessive use of alcohol, and the judge painstakingly instructed the jury as to what is meant by ordinary care and left to them by a special question the issue whether the defendant had been negligent toward the seaman, a negative answer by the jury to that question was not affected adversely to the plaintiff by a further instruction that "on the evidence you would not be warranted in finding this man insane at the time he jumped off."

TORT by the administratrix of the estate of John Joseph Bugden. Writ in the Superior Court dated July 16, 1943.

The case was tried before *Dowd*, J.

Portions of the charge to the jury were as follows:

"So the first question you come to . . . is the question of whether or not the defendant was negligent in this case. Now negligence in this case is no different from negligence in any other case. It involves the doing or not doing of certain things which the ordinary careful prudent man would do and the observance of obligations of course which the ordinary man is bound to observe. The owner is not an insurer here of the life of any of his crew. He doesn't take any such obligation on himself but he must use the ordinary care for the cure and care of his men. . . . All he has to do is what the ordinary careful, prudent man would do under the circumstances, no more, no less, and if you find he has done that he has complied with his obligation in law and there can be no recovery. And so you consider this matter, gentlemen, as men of common sense. . . .

"Well now what happened here? Well here is a seaman protected by law, who had rights under the statute, and the owner's responsibility as set out in the statute is of course that the owner is responsible for any failure on the part of his servants or agents to fulfill any obligation he himself in law is subject to perform. But what happened here? Well a seaman was drowned. How was he drowned? . . . The captain is supposed to look after the crew for care, medicine and cure. For ordinary care. . . . Ordinary care is . . . what an ordinary careful man would do under given circumstances. . . . Well there was evidence here of course that the owner of the vessel had some intimation at last that this man was inclined to be suicidal. Well what did the owner do? There is evidence here that he called members of the crew and said, 'Look after that man, I don't like the way he acts.' The evidence is that he told all hands on board 'I will have to look after that man, I don't like the way he is acting' and he went down with him to his bunk. It wasn't necessary to sit at the side of his bunk, to use extraordinary care, but ordinary care. If you find

he exercised ordinary care such as the ordinary man would exercise, then there is no recovery here. That is all he is compelled to do.''

After conference with counsel following the charge, the judge further instructed the jury as follows:

''One other matter perhaps I didn't bring out clearly enough when speaking of the plaintiff's intestate's conduct. There is a presumption in law that every man is sane and you would not be warranted in finding this man insane when he dropped in the sea but there is evidence of mental disturbance. But you may consider that in mitigation of damages only, not as a right to recover. You heard the evidence here, how he ran and jumped off into the sea. But unless the mental disturbance was something that unhinged his mind you would not be warranted in finding him insane. . . . If there is any doubt about what I said, on the evidence you would not be warranted in finding this man was insane at the time he jumped off. It is agreed by counsel that the only issue here is whether or not the defendant exercised ordinary care in preventing this man from committing suicide. . . . Counsel has said they would like to have me tell the jury that the mental condition at the time he jumped overboard also should be considered by you as to whether or not his act then was that of a man who really understood what he was doing . . . I think the jury can have that.''

The plaintiff's exception was stated as follows: ''Plaintiff takes an exception to that part of the charge wherein the court said the jury would not be warranted in finding the man was insane.''

*H. Kisloff*, for the plaintiff.

*J. P. Rooney*, (*L. P. Manning* with him,) for the defendant.

QUA, J. This is an action of tort against the owner of a fishing vessel to recover for the death at sea of the plaintiff's intestate which occurred on or about April 16, 1943, as a result of his jumping into the sea while in the employ of the defendant on a fishing trip in the defendant's vessel.

The bill of exceptions states that the action is brought both under the Jones act (U. S. C. [1940 ed.] Title 46, § 688) and under the death on the high seas act (U. S. C. [1940 ed.] Title 46, §§ 761–767). It is settled that actions may be brought in State courts under the Jones act. *Panama Railroad* v. *Vasquez,* 271 U. S. 557. *Garrett* v. *Moore-McCormack Co. Inc.* 317 U. S. 239. *O'Donnell* v. *Great Lakes Dredge & Dock Co.* 318 U. S. 36, 43. *Silva* v. *Gorton Pew Fisheries Co. Ltd.* 303 Mass. 531, 532. And it has been held that because of the clause of the judiciary act of 1789, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it" (U. S. C. [1940 ed.] Title 28, §§ 41, 371), actions to recover damages under the death on the high seas act may be brought in State courts. *Elliott* v. *Steinfeldt,* 254 App. Div. (N. Y.) 739. *Batkiewicz* v. *Seas Shipping Co. Inc.* 53 Fed. Sup. 802. For the purpose of deciding the single question here presented it is enough if the case is properly before us under either of these acts.

Recovery under either act hinges upon proof that the defendant was negligent. No other ground of liability is claimed. The judge stated to the jury in his charge, apparently without objection, that counsel had agreed that the only issue was "whether or not the defendant exercised ordinary care in preventing this man from committing suicide." The judge submitted to the jury the special question, "Was the defendant negligent?" To this the jury answered "No." The jury has therefore determined the single decisive factual issue of the defendant's negligence apart from any issue of cause of death or any other issue in the case, and has decided that issue against the plaintiff. The answer of the jury necessarily required a general verdict for the defendant, and no error in the conduct of the trial could be material unless it might in some way have affected the jury's answer to the special question. The only exception saved was to instructions in the charge that "the jury would not be warranted in finding" that the deceased was insane. It follows that the only question before us is whether there was error in this instruction

which may have affected the jury's answer to the special question. We consider nothing else.

There was evidence that when the deceased came on board on April 10, at the beginning of the trip, he was under the influence of liquor and, contrary to his usual disposition, was argumentative; that the next day, when he started fishing, he was "a little shaky at first"; that after working three or four days, standing his watches with the other men, he ceased work, went to his bunk, and began to exhibit symptoms that came to the attention of the captain, who directed that he be watched; that the deceased would roll his eyes and mumble to himself; that he did not eat; that he talked to himself; that he tried to jump over the rail but was caught and held back by another man; that he "looked paler"; and that finally, after a day or two of these abnormal manifestations, he came on deck, ran from one side of the vessel to the other, and jumped over the rail before the nearest man could grab him. No contention is made of negligence in failing to rescue him from the water. A specialist in neuropsychiatry, called by the plaintiff, gave his opinion that the deceased suffered from "an acute neurosis which in simple language is an acute mental upset" precipitated by the excess use of alcohol; that "he was in fact in the very early stages of a delirium tremens"; that the mental disorder is relatively temporary; that recovery should take place in a relatively short time; and that the witness could not conclude that the man's trouble might result in death or insanity.

It will be noticed that there was no direct testimony that the deceased was "insane," and that even the physician called by the plaintiff could not say that the deceased's trouble would result in insanity. But whether or not there was any evidence of what can properly be called insanity, we cannot perceive that the instruction that the jury would not be warranted in finding the deceased insane could possibly have been prejudicial to the plaintiff on the issue of the defendant's negligence. That issue must be decided upon the facts as they presented themselves to the master and crew of a fishing vessel at sea. The standard of care

required was that of reasonably prudent men under the circumstances, seeing what these men saw or ought to have seen of the appearance and actions of the deceased. *Roberts v. United Fisheries Vessels Co.* 141 Fed. (2d) 288. They had nothing more to guide them. Their duty was not affected in any way by such considerations as the exact point in the psychopathic scale where a mental disturbance technically becomes insanity or whether delirium tremens is a form of insanity, as the plaintiff argues it is. In a case like this these are mere abstractions having no bearing upon the issue. None of the true considerations upon which the jury's judgment of the conduct of the master and crew must be based was withdrawn from the jury by the instruction complained of. On the contrary, the judge correctly stated to them the duty of care and the standard of care required. He directed their attention specifically to some of the evidence and by the whole tenor of the charge he left all of it to them. He told them that there was evidence of mental disturbance, which he at first stated could be considered only "in mitigation of damages," but later he stated that the mental condition of the deceased should be considered also "as to whether or not his act then was that of a man who really understood what he was doing." In the face of all this the jury's answer to the question whether the defendant was negligent could not have been affected by the instruction that they would not be warranted in finding the deceased insane, whether or not the instruction squared with some supposedly approved definition of insanity.

*Exceptions overruled.*