**WILSON**

v.

**TRANSOCEAN AIRLINES et al.**

**No. 33081.**

United States District Court
N. D. California, S. D.
April 15, 1954.

Spencer & Bourke, Oakland, Cal., for plaintiff.

Jesse H. Steinhart, John J. Goldberg, San Francisco, Cal., for defendant Transocean Air Lines, Inc.

GOODMAN, District Judge.

On July 11, 1953, a Transocean airliner flying the vast expanse of the Pacific from Guam to Oakland, California, crashed into the sea some 325 miles east of Wake Island. All 58 persons aboard were killed.

What law affords the right of action for these deaths upon the high seas? In what forum must a remedy be sought? These are the puzzling questions tendered by this and similar suits now before this court. Questions which strangely have not yet been set at rest.

The plaintiff in this action, the widow of George Wilson, a passenger on the

airliner, sought redress for loss of his companionship and support in the Superior Court of the State of California in and for the County of Alameda. Defendant removed the action to this court in reliance upon the statutory privilege to remove from the State courts any civil action of which the district courts of the United States have original jurisdiction. 28 U.S.C. § 1441. Defendant asserts that this action is within this court's original jurisdiction because the action seeks damages in excess of $3,000 and is founded upon a right arising under a statute of the United States, the Death on the High Seas Act, 41 Stat. 537, 46 U.S.C.A. §§ 761–767.

Plaintiff has moved to remand the cause to the State court, claiming that her action is founded upon a right afforded by the Wrongful Death Statute of California, California Code of Civil Procedure § 377, rather than upon a right given by the Death on the High Seas Act. Defendant in turn has moved to dismiss the action upon the ground that the sole right of action for the death of plaintiff's husband is afforded by the Death on the High Seas Act which requires suit to be brought by his personal representative. Both motions thus raise an identical question of law. Is there a right of action for the death of plaintiff's husband under the Wrongful Death Statute of California or is the sole right of action afforded by the federal Death on the High Seas Act?

The clues to the answer to this question lie in the history of the action for wrongful death at sea. In the early judicial history of the United States, a few courts of admiralty, moved by humanitarian considerations, recognized in the general maritime law a right of action for wrongful death.[1] But, in 1886, the decision of the Supreme Court in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, established that such right did not exist in the general maritime law as administered in the courts of the United States, except as created by a state or federal statute.

At that time there was no federal statute granting a right of action for wrongful death at sea. But many of the states had enacted statutes modifying the common law by granting a right of action for wrongful death generally. The state[2] common-law courts had already resorted to these state statutes to afford redress for wrongful deaths occurring on state territorial waters. The Supreme Court had sustained the power of the states to create a right of action for wrongful death upon their territorial waters, in the absence of conflicting federal legislation, and the jurisdiction of the common-law courts to enforce it.[3] A few of the lower federal courts had also held that such a right might be enforced in admiralty.[4]

The Court of Appeals of New York in 1879, had gone so far as to apply the New York Wrongful Death Act to

---

1. Plummer v. Webb, Me.1825, 19 Fed.Cas. page 894, No. 11,234, 1 Ware 75; Cutting v. Seabury, Mass.1860, 6 Fed.Cas., page 1083, No. 3,521; The Sea Gull, C.C.Md.1865, 21 Fed.Cas., page 909, No. 12,578, Chase 145; The City of Brussels, S.D.N.Y.1873, 5 Fed.Cas., page 761, No. 2,745, 6 Ben. 370; The Towanda, C.C. E.D.Pa.1877, 24 Fed.Cas., page 74, No. 14,109, 23 Int.Rev.Rec. 384; The Charles Morgan, S.D.Ohio 1878, 5 Fed.Cas., page 511, No. 2,618, 2 Flip. 274; The David Reeves, Md.1879, 12 Fed.Cas., page 386, No. 6,625, 5 Hughes 89; The E. B. Ward, Jr., C.C.E.D.La.1883, 17 F. 456; The Manhasset, D.C.E.D.Va.1884, 18 F. 918; The Columbia, D.C.S.D.N.Y.1886, 27 F. 704.

2. E. g., Mahler v. Norwich & N. Y. Transportation Co., 1866, 35 N.Y. 352; Opsahl v. Judd, 1883, 30 Minn. 126, 14 N.W. 575.

3. American Steamboat Co. v. Chase, 1872, 16 Wall. 522, 21 L.Ed. 369; Sherlock v. Alling, 1876, 93 U.S. 99, 23 L.Ed. 819.

4. The Highland Light, C.C.Md.1867, 12 Fed.Cas., page 138, No. 6,477, Chase 150; Holmes v. Oregon & California Railway Co., D.C.Or.1880, 5 F. 75; The Long Island North Shore Passenger & Freight Transportation Co., D.C.S.D.N.Y.1881, 5 F. 599; The Garland, D.C.E.D.Mich. 1881, 5 F. 924; The Clatsop Chief, D.C. Or.1881, 8 F. 163.

permit recovery for death on the high seas aboard a vessel registered in New York and owned by citizens of that state. McDonald v. Mallory, 77 N.Y. 546, 547. And, the Federal Circuit Court for the Eastern District of Louisiana had stated in 1883, as an alternative ground for overruling exceptions to a libel, that a court of admiralty might entertain a libel founded on the Louisiana Death Act for wrongful death on the high seas against a vessel owned by citizens of Louisiana and maintaining her home port in New Orleans. The E. B. Ward, Jr., 17 F. 456.

In 1907, in The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, the Supreme Court confirmed the power of a state to create an enforceable right of action for death upon the high seas. In that case, the Supreme Court held that the right of, action given by the Delaware Wrongful Death Statute was properly recognized by an admiralty court in a limitation of liability proceeding arising out of the collision on the high seas of two vessels owned by Delaware corporations.

The power of a state to afford a right of action for deaths occurring on the high seas, as well as on territorial waters, was thus established. But the value of such a state-created right of action for death on the *high seas* was another matter. For the power of a state to create a corresponding liability for a death on the high seas was of course limited to those vessels, persons, and corporations over whom the state had legislative jurisdiction.[5] Legislative jurisdiction to impose a liability for a wrongful act at sea beyond the boundaries of the state had to rest upon one of two theories: either (1) that the vessel upon which the wrongful act occurred was constructively part of the territory of the state; or (2) that the wrongdoer was a vessel or citizen of the state subject to its jurisdiction even when beyond its territorial limits. Neither theory sufficed for every situation.[6]

The theory that a ship is part of the territory of the country to which it belongs is a strained fiction even when applied to sovereign nations. When applied to states of the Union it is even more inappropriate. For an American ship does not actually fly the flag of any particular state but is part of the merchant marine of the United States. A ship may be said to belong to a particular state if it maintains its home port there or if its owners reside there. Thus uncertainty is injected into the task of assigning a ship to a particular state if its home port is in one state and its owners reside in another, and the task is further complicated if the ship is jointly owned by persons or corporations residing in different states.

Both theories for determining the state which has legislative jurisdiction to impose liability for a wrongful act at sea are inadequate to guide the choice of the state law to apply in cases of collision on the high seas between vessels of different states, particularly when both vessels are at fault. The difficulties inherent in this situation are well illustrated by the decision in The Middlesex, D.C.Mass.1916, 253 F. 142, in which the court concluded that there could be no recovery under any of three possibly applicable state wrongful death statutes.

This decision in The Middlesex in 1916 increased the agitation which had commenced as early as 1899 for a federal statute affording a right of action for wrongful death occurring within the admiralty jurisdiction.[7] The earliest

---

5. E. g. see Crapo v. Allen, Mass.1849, 6 Fed.Cas., page 763, No. 3,360, 1 Spr. 184.

6. For a full account of the difficulties involved in applying these theories see Robinson, "Wrongful Death in Admiralty and the Conflict of Laws," 36 Columbia Law Review 406 (1936); Magruder and Grout, "Wrongful Death Within the Admiralty Jurisdiction," 35 Yale Law Journal 395 (1926); Putnam, "The Remedy for Death at Sea," 22 Case and Comment 125 (1915).

7. For an account of the efforts to secure the passage of the federal statute see Hughes, "Death Actions in Admiralty," 31 Yale Law Journal 115 (1921); Putnam,

bills submitted to the Congress provided a uniform and exclusive federal right of action for all navigable waters.[8] Since local practitioners felt that their own state statutes should govern actions for death occurring on state waters, these bills met with a luke-warm reception. The next group of bills considered by the Congress provided a uniform federal right of action for death on all navigable waters, to be exclusive on the high seas, but to displace state-created rights on territorial waters only at the election of suitors.[9] But again considerable opposition arose to a federal statute which would to any extent displace the state statutes on territorial waters.[10]

To avoid further opposition of this nature, the Maritime Law Association, which had been one of the principal advocates of the federal statute, in 1915, prepared a bill providing a uniform federal right of action solely for the high seas, and leaving the operation of state statutes unimpaired on territorial waters.[11] This bill was introduced in the House and Senate in the 64th Congress.[12] While it was before the Congress the decision in Middlesex was handed down and called to the attention of the committees considering the bill.[13]

The bill was favorably reported in both houses,[14] but did not reach a vote.

The same bill was reintroduced in the House on the opening day of the 65th Congress.[15] But since the United States entered World War I four days later, no action was taken on the bill during that Congress. Following World War I, the bill was introduced in the 66th Congress.[16] The bill was passed by the Senate with an amendment not material here. The bill then provided, in Section 1, a right to maintain a suit in admiralty for wrongful death upon the high seas. Section 7 of the bill provided that "the provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this Act as to causes of action accruing within the territorial limits of any state." [17] At this point it was clear both from the language of the bill and from the reports of both the Senate and House Judiciary Committees to which the bill had been referred,[18] that it was intended that the federal right of action should be exclusive for deaths upon the high seas and that the state wrongful death statutes should supply the right of action for deaths upon state territorial waters.

supra Note 6; Cunningham, "Shall We Continue to be Drowned at Sea Without Remedy?" 22 Case and Comment 129 (1915); Smith, "An Attempt by Lawyers to Remedy the Law," 22 Case and Comment 131 (1915).

8. H.R.9197, 56th Congress, March 6, 1900; H.R.9880 (Jan. 13, 1904), S.5564 (April 18, 1904), 58th Congress; H.R.11486 (Jan. 11, 1906), 59th Congress; H.R. 25807 (Jan. 11, 1909), S.8397 (Jan. 12, 1909), 60th Congress; H.R.15810 (Dec. 17, 1909), S.6291 (Feb. 11, 1910), 61st Congress; S.2673 (June 7, 1911), 62nd Congress. The text of one of these early bills may be found in 22 Harvard Law Review 416, note 3.

9. H.R.24764 (May 22, 1912), S.6930 (May 23, 1912), 62nd Congress; H.R.6143 (June 17, 1913) (passed House Jan. 6, 1915), S.1661 (Aug. 28, 1913), 63rd Congress. For the text of these bills see 51 Cong.Rec. Part 2, p. 1928. Compare the opposition bill H.R.12807 (Feb.

2, 1914), 63rd Congress, set out at 51 Cong.Rec., Part 3, 2756.

10. See the debate on H.R.6143, 63rd Congress at 51 Cong.Rec. 1927–30, 2751–56; 52nd Cong.Rec. 283–90, 1065–77, Appendix 31–2.

11. See Hughes, supra note 7 at 118.

12. H.R.9919, S.4288, 64th Congress.

13. See letter from Mr. George W. Whitelock, American Bar Association, to House and Senate Judiciary Committees, Senate Report, 741, House Report 1419, 64th Congress.

14. Senate Report 741, House Report 1419, 64th Congress.

15. H.R. 39 (April 2, 1917), 65th Congress.

16. S.2085 (Nov. 19, 1919), 66th Congress.

17. See 59 Cong.Rec. 4482.

18. Senate Report 216, House Report 674, 66th Congress.

Then an event occurred which rendered the Congressional intent in this respect uncertain. During the course of debate upon the bill in the House,[19] Representative Mann of Illinois offered an amendment striking from the quoted sentence of Section 7, the concluding clause "as to causes of action accruing within the territorial limits of any state." This amendment left the sentence reading, as it does in the Act, that "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this Act." It is obvious from the remarks of Representative Mann that he offered this amendment so as to preserve for litigants the right to avail themselves of state-created rights of action for death not only in suits for deaths occurring on state territorial waters, but also in suits for death occurring on the high seas. However, it is also evident from the remarks of other members of the House that there was a divergence of opinion as to whether the proposed amendment would achieve Representative Mann's purpose. It was pointed out that it was implicit in the background and structure of the bill that the federal right of action was to be exclusive on the high seas, and the mere absence from the bill of the provision expressly limiting the scope of state statutes to territorial waters would not necessarily indicate that they were to have any wider application. As was observed by Representative Goodykoontz, the effect of the amendment was to leave the remaining language of the sentence "not unlike Mahomet's coffin, suspended between heaven and earth, having no application to anything in particular." Moreover, other members of the House were of the opinion that once the Congress had chosen to legislate in this field, wherein it had paramount jurisdiction, inconsistent state statutes would necessarily be superseded.

Thus it is not at all clear that the subsequent approval of the amendment should be accepted as an indication that the intent of the Congress coincided with that of the amendment's author. It is equally likely that the approval of the amendment represented no more than the acceptance of what appeared to be an innocuous change in language to facilitate the immediate passage of the legislation.

So, while the Mann amendment provides a strong argument that the Death on the High Seas Act does not supersede state wrongful death statutes on the high seas, the argument is not so strong but what it is overcome by other considerations. The Death on the High Seas Act was prompted, in large part, by the desire to put an end to the uncertainties attending the application of state statutes to deaths on the high seas. Many of these uncertainties would remain to plague both courts and litigants if the state statutes could still be availed of by suitors. In addition, since the Death on the High Seas Act was drawn with the purpose to afford an exclusive, uniform federal right of action for death on the high seas, the right of action which it created is not appropriate to serve as a mere supplement to state-created rights of action on the high seas.

Moreover, any attempt to apply a state wrongful death statute to a death occurring on the high seas, would, today, raise a serious constitutional question. For decisions of the Supreme Court subsequent to its decision in The Hamilton, supra, in 1907, have cast doubt on the continued vitality of the holding in that case that a state has power to create a right of action for death on the high seas. In the celebrated case of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, in 1917, and in cases that followed,[20] the Supreme

19. 59 Cong.Rec. 4482–4486.

20. For an account of the development of the Jensen doctrine and its present sta-
tus see 36 Cornell Law Quarterly 355 (1951) and the cases and articles cited therein.

Court greatly broadened the scope of the doctrine that state statutes cannot interfere with the essential uniformity of the maritime law. After the Jensen decision, the Supreme Court reaffirmed the power of the states to give a right of action for deaths occurring on their *territorial waters,* stating that· such legislation was within the "maritime but local" exception to the Jensen rule. Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210.[21] But since it would be difficult to bring a state-created right of action for death on the *high seas* within this exception, it is doubtful that the Supreme Court would now sanction the application of state death statutes to deaths on the high seas. An interpretation of the Death on the High Seas Act which would require resolution of this constitutional question is to be avoided if fairly possible.

Finally, in all the years that have elapsed since the passage of the Death on the High Seas Act, it appears to have been the unanimous view of both the cases and the commentators that the Act supersedes the state wrongful death statutes as to actions for death occurring on the high seas.[22] An ambiguous and ill-considered amendment to the bill, which became the Act, is not sufficient justification for reaching a contrary conclusion at this late date.

In arriving at this conclusion, however, we do not fully resolve the problem which this cause tenders. For, in order to hold that the federal right precludes any state cause of action, we must first determine, what has thus far been assumed, that the Death on the High Seas Act *in fact* affords a right of action for the death of plaintiff's husband. Plaintiff says that it does not. She contends that the Federal Act has no application to deaths resulting from the operation of aircraft *over* the high seas.

This would appear to require consideration of the jurisdiction of admiralty over the airspace above the high seas as well as the constitutional power of the Congress to create a maritime right of action for a tort committed there.[23] But the present posture of this case in

21. Compare Just v. Chambers, 1941, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903, noted in 29 California Law Review 519 (1941).

22. Middleton v. Luckenbach S. S. Co., 2 Cir., 1934, 70 F.2d 326; Echavarria v. Atlantic & Caribbean Steam Nav. Co., D. C.E.D.N.Y.1935, 10 F.Supp. 677; In re Klein's Estate, 1937, 162 Misc. 589, 295 N.Y.S. 197; Kristansen v. Steinfeldt, 1937, 165 Misc. 575, 300 N.Y.S. 543, 544, reversed on other grounds, 1939, 256 App. Div. 824, 9 N.Y.S.2d 790; In re Rademaker's Estate (The Mohawk), 1938, 166 Misc. 201, 2 N.Y.S.2d 309, 1938 A. M.C. 396; Elliott v. Steinfeldt, 2nd Dept. 1938, 254 App.Div. 739, 4 N.Y.S.2d 9; Choy v. Pan-American Airways Co., D.C. S.D.N.Y.1941, 1941 A.M.C. 483, 487; Batkiewicz v. Seas Shipping Co., D.C.S.D. N.Y.1943, 53 F.Supp. 802; Sierra v. Pan American World Airways, Inc., D.C. Puerto Rico 1952, 107 F.Supp. 519; cf. Lindgren v. United States, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686; Magruder and Grout, "Wrongful Death Within the Admiralty Jurisdiction," 35 Yale Law Journal 395, 422-3 (1926); Robinson, "Wrongful Death in Admiralty and the Conflict of Laws," 36 Columbia Law Review 406, 410, note 19 (1936); Willmott, Case Comment, 24 Cornell Law Quarterly 107, 108 (1938); 1 Benedict on Admiralty 394, note 57 (6th Ed. 1940); Willock, "Commentary on Maritime Workers," 46 USCA preceding § 688 at 255-6 (1944); Note, "The Tangled Seine: A Survey of Maritime Personal Injury Remedies," 57 Yale Law Journal 243, 271 (1947).

23. At the beginning of the development of aviation in the United States there was a considerable body of opinion that the entire ocean of air surrounding the earth is within the admiralty jurisdiction, and that consequently all air flight is within the admiralty and maritime jurisdiction of the federal government. This theory never received general acceptance, and the federal legislation regulating air navigation has been based on the Commerce Clause of the Constitution. However, the question whether the airspace over the seas is within the jurisdiction of admiralty has received little attention and remains an open one. See Knauth, "Aviation and Admiralty," 6 Air Law Review 226 (1935); Veeder, "The Legal Relation

the pleading stage is such that these questions need not be reached.

■ For plaintiff seeks recovery for a death assertedly caused by a wrongful act consummated on the sea itself. The complaint alleges that the aircraft on which plaintiff's husband was a passenger "crashed into the ocean, and as a direct and proximate result thereof," he was killed. The alleged locale of the tortious act places it within the traditional tort jurisdiction of admiralty. Had death not ensued, admiralty would have afforded a right of action for resulting injuries without statutory aid.

■ Admiralty tort jurisdiction has never depended upon the nature of the tort or how it came about, but upon the locality where it occurred.[24] This "locality" test has been stated in its broadest form by the Supreme Court, itself, in its oft-quoted Plymouth dictum that "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."[25] Locality has remained the sole test of admiralty tort jurisdiction despite reoccurring expressions of doubt whether the tort must not also bear some relation to the operation of a vessel.[26]

■ In applying the "locality" test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action.[27] In so far as appears from the complaint in this action, the wrongful act charged to defendant produced no actionable injury until the aircraft plunged into the sea. The tort occurred upon the high seas within the admiralty jurisdiction. If it is assumed, arguendo, that the airspace over the high seas is without the admiralty jurisdiction, this case is analogous to those cases in which persons or property are precipitated from the land into the sea as the result of a wrongful act or omission. In such cases if there is no impact upon the person or property before they strike the water, it is recognized that the tort occurs upon the water within the admiralty jurisdiction.[28]

■ It is clear that the scope of the Death on the High Seas Act, within the geographical area of its operation, was intended to be as broad as the traditional tort jurisdiction of admiralty. As has been noted, the purpose of the Act was to afford a uniform right of action for death resulting from wrongful acts within the admiralty jurisdiction, excepting state territorial waters. The extent of the right of action given by the Act is not defined in terms of the nature of the wrongful act causing death, but solely in terms of the locale of the act. The statute declares that there shall be a right of action "Whenever the death of a person shall be caused by wrongful

between Aviation and Admiralty," 2 Air Law Review 29 (1931); Report of the Special Committee on the Law of Aviation of the American Bar Association, 46 American Bar Association Reports 77–97, 498–530 (1921); Bogert, "Problems in Aviation Law," 6 Cornell Law Quarterly 271, 303–305 (1921). In 1952, the Congress expressly declared by statute that any aircraft, belonging to the United States or to any United States citizen or corporation, while in flight above the high seas is within the maritime jurisdiction of the United States for purposes of the criminal statutes. 66 Stat. 589, 18 U.S.C. 7.

24. See 1 Benedict, Admiralty, § 127 (6th Ed. 1940) and the cases cited therein.

25. The Plymouth, 1865, 3 Wall. 20, 36, 18 L.Ed. 125.

26. 1 Benedict, Admiralty, § 127 (6th Ed. 1940).

27. The Plymouth, 1865, 3 Wall. 20, 18 L.Ed. 125; Hermann v. Port Blakely Mill Co., D.C.N.D.Cal.1895, 69 F. 646; Todd Shipyards Corp. v. Harbor Side Trading & Supply Co., D.C.E.D.N.Y.1950, 93 F.Supp. 601; Lacey v. L. W. Wiggins Airways, Inc., D.C.Mass.1951, 95 F.Supp. 916; 1 Benedict, Admiralty, § 128 (6th Ed. 1940).

28. See e. g. Fireman's Fund Ins. Co. v. City of Monterey, D.C.N.D.Cal.1925, 6 F.2d 893; The City of Lincoln, D.C.S.D.N.Y.1885, 25 F. 835.

act, neglect, or default occurring on the high seas". 46 U.S.C.A. § 761. A further indication that the statute encompasses all tortious acts on the high seas within the established jurisdiction of admiralty, is the language that suit may be brought against whoever "would have been liable if death had not ensued."

Plaintiff further urges that, even if the Death on the High Seas Act, in its inception, afforded a right of action for deaths resulting from airplane crashes on the high seas, such deaths have been removed from its ambit by the Air Commerce Act of 1926, 44 Stat. 568, 49 U.S.C.A. §§ 171–184. Section 7 of that Act, 49 U.S.C.A. § 177, provides that "the navigation and shipping laws of the United States, including any definition of 'vessel' or 'vehicle' found therein and including the rules for the prevention of collisions, shall not be construed to apply to seaplanes or other aircraft or to the navigation of vessels in relation to seaplanes or other aircraft." The purpose of the Air Commerce Act of 1926 was to foster civil aviation by establishing federal aids to navigation and federal safety regulations.[29] The Act authorized regulations for the examination, rating, and registration of aircraft and airmen, and air traffic rules for the navigation, protection, and identification of aircraft. Section 7 was intended to prevent any conflict between the existing federal regulations respecting the navigation of vessels and those to be promulgated respecting the navigation of aircraft. The term "navigation and shipping laws" as used in Section 7 of the Act obviously refers to those federal laws specifically governing the navigation and operation of the merchant marine. The term was never intended to include a general admiralty statute such as the Death on the High Seas Act.[30]

The reported cases all sustain the conclusion that the Death on the High Seas Act affords a right of action for deaths resulting from airplane crashes on the high seas.[31] This is fortuitous for the litigant, for otherwise he would be without a right of action if there were no applicable state statute.[32]

Since the federal Death on the High Seas Act affords a right of action for the death of plaintiff's husband, and that right is exclusive, the cause was properly removed to this court, if the Superior Court had jurisdiction to entertain it. Although the parties did not question the jurisdiction of the state court to entertain a suit under the Death on the High Seas Act, this court raised the question since it appeared to the Court from the language of the Act, that exclusive jurisdiction to entertain a suit under the Act was vested in the federal courts of admiralty. At the

29. See, Lee, "Legislative History of the Air Commerce Act of 1926," 1929 U.S. Aviation Reports 117; Knauth, "Aviation and Shipping," 1 Air Law Review 425 (1930).

30. See Choy v. Pan-American Airways Co., D.C.S.D.N.Y.1941, 1941 A.M.C. 483, 485.

31. Sierra v. Pan American World Airways, Inc., D.C.Puerto Rico 1952, 107 F.Supp. 519; Lacey v. L. W. Wiggins Airways, Inc., D.C.Mass.1951, 95 F.Supp. 916; Wyman v. Pan American Airways, Inc., 1943, 181 Misc. 963, 43 N.Y.S.2d 420; Choy v. Pan-American Airways Co., D.C. S.D.N.Y.1941, 1941 A.M.C. 483.

32. Indeed, plaintiff, herself, might find herself without a right of action. She has confidently assumed that the California Wrongful Death Statute affords a right of action on the high seas. But, this is not necessarily so. For the right of action can be no broader than that granted by the terms of the statute. While the California statute is general in its terms, there is no indication in its language that it has any extra-territorial application on the high seas. The state courts of California have apparently never ruled upon the applicability of the California Statute to deaths on the high seas. But, Judge Sawyer in the old Federal Circuit Court for California held that the California Wrongful Death Act was not intended to afford a right of action for wrongful death on the high seas. Armstrong v. Beadle, 1879, Fed.Cas.No.541, 5 Sawy. 484.

Court's request, the parties briefed the question with the result that defendant now contends that a suit under the Death on the High Seas Act lies solely within the admiralty jurisdiction, while plaintiff urges that the right given by the Act may also be enforced in a suit at law in the state or federal courts. If plaintiff is correct, the removed action could proceed in this court as a suit at law with right of trial by jury.[33] If defendant is correct, the action must be dismissed, inasmuch as this court acquired no jurisdiction by the removal of the action if the state court had no jurisdiction to entertain it.[34] Such dismissal would, of course, be without prejudice to the filing of a new suit in admiralty, by the decedent's personal representative.

On its face, the language of the Death on the High Seas Act seems quite clearly to grant exclusive jurisdiction of actions under the Act to courts of admiralty. Section 1 of the Act provides as follows:

> "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

█ Thus, in a single sentence the statute both creates a right of action,

which did not previously exist, and stipulates that the right is to be enforced in the federal courts of admiralty. The provision that enforcement is to be in admiralty is a limitation on the right itself.

Plaintiff urges that the use of the permissive expression "may maintain a suit * * * in admiralty" is indicative of Congressional intent to *offer* the admiralty forum rather than to *withhold jurisdiction* from the courts of law. Such intent, plaintiff asserts, would be consistent with the general federal legislation saving to suitors the privilege of availing themselves of common-law remedies for the enforcement of maritime rights.[35]

But, this construction of Section 1 overlooks the fact that the word "may" is not employed to designate a permissible forum but to grant a right of action. The statute says that the personal representative of the decedent "may maintain a suit". By these words the statute gives a right of action where none existed before. The use of a mandatory word such as "shall" in this context would have been entirely inappropriate. The remainder of the sentence designating the forum is a qualification of the permission to maintain a suit.

█ Moreover, the construction offered by plaintiff would render the words "in admiralty" mere surplusage. Yet, as plaintiff, herself, notes, "no rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded every word in a statute."[36] No express permission would have been necessary merely to open the courts of admiralty for the enforcement of the maritime right created by the statute. A suit to

---

33. If, of course, the complaint were amended to state that the action was brought by the plaintiff in the capacity of the decedent's personal representative.

34. General Investment Co. v. Lake Shore and Michigan Southern Railway Co., 1922, 260 U.S. 261, 288, 43 S.Ct. 106, 67 L.Ed. 244; Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co., 1922, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671.

35. 1 Stat. 76 (1789); Rev.Stat. § 711 (1875); 28 U.S.C. § 1333 (1948).

36. Plaintiff's supplemental brief p. 5, quoting from Chambers v. Robertson, 1950, 87 U.S.App.D.C. 91, 183 F.2d 144, 148.

enforce a maritime right is a case within the admiralty jurisdiction. The District Courts of the United States have original jurisdiction of "any civil case of admiralty or maritime jurisdiction". 28 U.S.C. § 1333.

Other language of the Death on the High Seas Act is also persuasive that suits under the Act are exclusively within the jurisdiction of the admiralty courts. Section 5 of the Act provides that:

"If a person die as the result of such wrongful act, neglect, or default as is mentioned in section 1 during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this chapter for the recovery of the compensation provided in section 2 of this act."

If the Congress contemplated that suits enforcing the right of action given by the Death on the High Seas Act should be maintained in courts of law, there would have been no reason to limit the right of substitution granted in Section 5 of the Act to suits for personal injuries which were pending in the admiralty courts.

But it is unnecessary to rely solely on the statutory language for support for the conclusion that the right of action granted by the Death on the High Seas Act may be maintained only in admiralty. Both the Committee reports of the 66th Congress which enacted the statute as well as the debate on the floor of the House make it clear that the framers of the Act intended to vest exclusive jurisdiction in the courts of admiralty. See Senate Report 216, House Report 674, 66th Congress; Vol. 59 Congressional Record, Part 5, pp. 4482–4486, 66th Congress.

It is also significant that the earliest decisions ruling upon the question of the forum in which the right of action granted by the Act should be enforced stated categorically that the suit must be in admiralty. See Dall v. Cosulich Line, D.C.S.D.N.Y.1928, 1936 A.M.C. 359; [37] Birks v. United Fruit Co., D.C. S.D.N.Y.1930, 48 F.2d 656; Echavarria v. Atlantic & Caribbean Steam Nav. Co., D.C.E.D.N.Y.1935, 10 F.Supp. 677; In re Rademaker's Estate (The Mohawk), 1938, 166 Misc. 201, 2 N.Y.S.2d 309, 1938 A.M.C. 396.

Indeed, the matter would seem too clear for question were it not for a line of cases which, beginning in 1938, some 18 years after the passage of the Act, have permitted suits under the Act at law. The first of these cases was Elliott v. Steinfeldt, 1938, 254 App.Div. 739, 4 N.Y.S.2d 9 in which the Appellate Division of the Supreme Court of New York reversed a judgment of the trial court dismissing for want of jurisdiction an action at law under the Death on the High Seas Act. In a brief memorandum opinion the appellate court stated that: "The Federal Death on the High Seas Act * * * supersedes the state death statute, * * * in so far as it creates and defines substantive rights arising out of wrongful death on the high seas. * * * But the right to maintain the action in the state courts,

---

37. In the Dall case, the plaintiff in a suit at law asserted both a right of action founded on Italian law and the right of action given by Section 1 of the Death on the High Seas Act. The Court dismissed the complaint, holding that neither right of action could be maintained because the Italian law was not pleaded and because the right of action given by the Death on the High Seas Act could be enforced only in admiralty. Consequently, this decision constitutes a ruling on the forum in which the Section 1 right of action must be enforced, and should be distinguished from those cases involving the forum in which a foreign right of action may be enforced under the provisions of Section 4 of the Death on the High Seas Act. See note 40 infra.

which had long existed under the Judiciary Act of 1789 * * * was not necessarily affected by the federal statute. Concurrent jurisdiction in federal and state courts to enforce rights granted by federal law is not uncommon * * *. Where the state courts have long enjoyed jurisdiction over the subject matter of an action, jurisdiction is not withdrawn by federal statute unless such an intention is distinctly manifested. * * * No such intent is discernible here." This line of reasoning is founded on the faulty premise that the state courts of law had long enjoyed jurisdiction to enforce the federal right of action for wrongful death. The only right of action for death on the high seas which the state courts had ever enforced was such right as had been created by state statute. And the state statutes had been applied to deaths on the high seas in only a few scattered cases.[38] The issue is not whether the federal statute purports to *withdraw* any pre-existing jurisdiction from the state courts, but whether the statute *withholds* from the state courts jurisdiction of an entirely new right of action.

The New York courts accepted jurisdiction of subsequent suits at law under the Death on the High Seas Act without further consideration, in reliance on the Elliott decision. See Murphy v. Steinfeldt, 1938, 254 App.Div. 741, 4 N.Y.S.2d 10; Colbert v. Steinfeldt, 1938, 255 App.Div. 790, 7 N.Y.S.2d 373; Kristanson v. Steinfeldt, 1939, 256 App. Div. 824, 9 N.Y.S.2d 790; Wyman v. Pan American Airways, Inc., 1941 A.M. C. 912, affirmed 1941, 262 App.Div. 995, 30 N.Y.S.2d 816.

In 1941, Judge Clancy in the United States District Court for the Southern District of New York, denied a motion to dismiss a suit at law under the Death on the High Seas Act, stating that the Act creates a right which may be asserted in a common law action. Choy v. Pan-American Airways Co., 1941 A.M. C. 483. Judge Clancy appears to have been largely persuaded by the decision of the Supreme Court in Panama R. Co. v. Johnson, 1924, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748, interpreting the Jones Act which had been enacted some three months after the Death on the High Seas Act. In that case, the Supreme Court held that the right of action given to seamen by the Jones Act might be enforced in admiralty although the Act merely provided that the right of action might be maintained in a suit at law. In referring to the Panama R. Co. case, Judge Clancy states that: "While that case presented the converse of the problem before us, much of its argument is apropos here. The Jones Act gives seamen a right to recover for wrongful death. It, and the Death on the High Seas Act, were enacted by the same Congress and it would appear to be anomalous to hold that seamen had a common law action for death and other victims of injuries on the same ship had not."

In my opinion, the Supreme Court decision in Panama R. Co. v. Johnson, interpreting the Jones Act, is an unreliable guide to employ in interpreting the Death on the High Seas Act. This is so because the Supreme Court's interpretation of the Jones Act was admittedly restricted by the necessity to avoid, if possible, a grave constitutional question. Happily the present problem in interpreting the Death on the High Seas Act is not complicated by any such restriction. Nor do I regard it as anomalous that the Congress which enacted the Death on the High Seas Act would enact another statute according the de-

---

38. For cases, in addition to the three previously referred to, in which a state wrongful death statute was applied to a death occurring on the high seas, see: International Nav. Co. v. Lindstrom, 2 Cir., 1903, 123 F. 475; Southern Pacific Co. v. De Valle Da Costa, 1 Cir., 1911, 190 F. 689; Souden v. Fore River Shipbuilding Co., 1916, 223 Mass. 509, 112 N.E. 82; The James McGee, D.C.S.D. N.Y.1924, 300 F. 93.

pendents of seamen a wider choice of forums in which to maintain an action for wrongful death. Traditionally different remedies have been available to seamen than to others suffering a maritime wrong. There are other differences between the remedies afforded by the Death on the High Seas Act and the Jones Act in addition to the difference in the permissible forums.[39] The two statutes had entirely different and distinct histories.[40]

In a later case in the United States District Court for the Southern District of New York, Batkiewicz v. Seas Shipping Co., 1943, 53 F.Supp. 802, Judge Hulbert relied upon Judge Clancy's decision as well as the Elliott case, supra, in holding that an action under the Death on the High Seas Act could be joined with an action at law under the Jones Act.

The third federal decision upholding the jurisdiction of a court of law to entertain a suit under the Death on the High Seas Act also relies for support on the previous decisions. Sierra v. Pan-American World Airways, Inc., D.C. Puerto Rico 1952, 107 F.Supp. 519.

Bugden v. Trawler Cambridge, Inc., 1946, 319 Mass. 315, 65 N.E.2d 533, is cited as supporting the conclusion that actions for death under the Death on the High Seas Act may be maintained at law. In that case the court said: "The bill of exceptions states that the action is brought both under the Jones Act, * * * and under the death on the high seas act * * *. It is settled that actions may be brought in State courts under the Jones Act. * * * And it has been held that because of the Judiciary Act of 1789, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it' * * *, actions to recover damages under the death on the high seas act may be brought in State courts. Elliott v. Steinfeldt, 254 App. Div. 739, 4 N.Y.S.2d 9; Batkiewicz v. Seas Shipping Co., Inc., D.C., 53 F.Supp. 802. For the purpose of deciding the single question here presented it is enough if the case is properly before us under either of these acts." Since the Massachusetts court unquestionably had jurisdiction of the suit under the Jones Act, this decision in no way constitutes an approval of the Elliott or Batkiewicz decisions.

Powers v. Cunard S. S. Co. Ltd., D.C. S.D.N.Y.1925, 32 F.2d 720 and The Saturnia, D.C.S.D.N.Y.1936, 1936 A.M. C. 469, are also referred to as supporting the view that the right of action granted by the Death on the High Seas Act may be enforced in a common-law court. But, in both of these cases the right of action asserted was created by foreign law. The court merely held that Section 4 of the Death on the High Seas Act which states that suit may be maintained in the federal courts of admiralty upon a right of action for death created by a foreign State without abatement in respect to the amount for which recovery is authorized, does not preclude a suit at law on the foreign right of action.[41] This is a very different ques-

---

39. The Jones Act designates alternate beneficiaries; the Death on the High Seas Act provides for apportionment of the recovery among all the designated beneficiaries. The Jones Act prohibits certain defenses which the Death on the High Seas Act does not.

40. See Willock, "Commentary on Maritime Workers," 46 U.S.C.A. preceding § 688, for the history of the Jones Act.

41. Section 4 of the Death on the High Seas Act provides that: "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding." Prior to the Death on the High Seas Act, any right of action for death on the high seas granted by foreign law could have been enforced in the state or federal courts of the United States either in suits at law or admiralty, but such suits were subject to the Limitation of Liability Statutes of

tion than whether suit may be brought at law on the federal right of action created by Section 1 of the Act.

This brief résumé of the decisions asserted to support the view that the right of action given by the Death on the High Seas Act may be maintained at law demonstrates that only the five decisions in the state courts of New York and three of the federal decisions are holdings to this effect. Of these eight decisions only two are predicated upon independent reasoning of the court. This reasoning, as has been noted, I do not find persuasive. My belief as to the unsoundness of these decisions is strengthened by the decision of Judge Weinfeld in Iafrate v. Compagnie Generale Transatlantique, D.C.S.D.N.Y. 1952, 106 F.Supp. 619, in which he reaches the same conclusion. It is noteworthy that Judge Weinfeld is a member of the United States District Court for the Southern District of New York where two of the contrary decisions were rendered.

■ I hold that the sole right of action for the death of plaintiff's husband is that granted by the Death on the High Seas Act, and that this right must be maintained in admiralty. Since the Superior Court of California had no jurisdiction to entertain the suit at law for the death of plaintiff's husband, this court could not acquire jurisdiction by removal. The action must therefore be dismissed without prejudice to the filing of an action in admiralty by the decedent's personal representative.

---

the United States, 46 U.S.C.A. § 183 et seq., The Titanic, 1914, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171. Section 4 of the Death on the High Seas Act provides a procedure by which the foreign right of action may be enforced in admiralty without having the recovery diminished by the Limitation of Liability Statutes. Powers v. Cunard S. S. Co. and The Saturnia merely held that Section 4 did not preclude the enforcement of a foreign right of action in a suit at law, but apparently the Limitation of Liability

Statutes would still apply to such a suit. Other cases have held that if a person asserting a foreign right of action for wrongful death wishes to avoid the Limitation of Liability Statutes by invoking Section 4 of the Death on the High Seas Act, the procedure set forth in that Section must be followed and the suit must be in admiralty. See The Silverpalm, 9 Cir., 1935, 79 F.2d 598; Egan v. Donaldson Atlantic Line, D.C.S.D.N.Y.1941, 37 F.Supp. 909.